IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER L. TIBBS, | Case No. 1:20-cv-06 |
| Petitioner | UNITED STATES DISTRICT JUDGE SUSAN PARADISE BAXTER |
| v. | UNITED STATES MAGISTRATE JUDGE RICHARD A. LANZILLO |
| FCI MCKEAN, | |
| Respondent | REPORT AND RECOMMENDATION |

I.   Recommendation

It is respectfully recommended that the petition for a writ of habeas corpus filed by federal prisoner Christopher L. Tibbs[1] (Petitioner) pursuant to 28 U.S.C. § 2241 be dismissed.

II.   Report

A.   Background

On January 13, 2015, Petitioner was sentenced in the United States District Court for the Eastern District of Michigan (the "sentencing court") to a 346-month term of imprisonment. ECF No. 12-2. Assuming he receives all good conduct time available to him under 18 U.S.C. § 3624(b), Petitioner's projected release date is June 16, 2039. *Id*.

On May 2, 2017, a corrections officer at FCI McKean searched a gym bag belonging to Petitioner after it set off a metal detector. ECF No. 12-7 at 7. The officer discovered two pre-marked sheets of notebook paper coated in an unknown substance consistent with synthetic cannabinoids. *Id*. The substance was sent to the Special Investigative Services (SIS), which

---

[1] Petitioner is incarcerated at FCI-McKean, a federal correctional institution located within the territorial boundaries of the Western District of Pennsylvania. The Warden of FCI-McKean is the Respondent in this action.

1

handles investigations at federal correction institutions.  SIS processed the paper and substance and sent them to the Pennsylvania State Police Laboratory for testing and identification.[2]  *Id*. at 6.  On September 1, 2017, the BOP received lab results indicating that the substance was synthetic cannabinoid MMB-FUBINACA, a Schedule I controlled substance.  *Id*. at 8.

On September 1, 2017, the prison served Petitioner with incident report 3028684 charging him with possession of narcotics in violation of Code 113.  ECF No. 12-4 at 2.  In response to the Incident Report, Petitioner stated that the drugs were not his and that the items in question did not come from his gym bag.  *Id*.  The Incident Report was suspended pending review for criminal prosecution pursuant to Program Statement 5270.09.[3]

Once the Incident Report was released to the BOP for administrative processing, it was delivered to Petitioner on November 6. 2017.  ECF No. 12-4.  Petitioner signed a form indicating that he had been advised of his rights.  ECF No. 12-5.  The BOP then referred the incident to the Unit Discipline Committee (UDC) for further disposition.  ECF No. 12-4.

On November 8, 2017, the UDC convened for an initial hearing.  *Id*. at 2.  Petitioner again stated that the substance was not his and requested that the committee "check the camera" to review footage of the incident.  *Id*.  At the conclusion of the hearing, the UDC determined that there was sufficient evidence to move forward and referred the incident report to the DHO with a recommendation that greater sanctions be imposed.  *Id*.

---

[2] The chain of custody log indicates that the officer who performed the search gave the evidence to an SIS officer on May 2, 2017.  That officer sent it by Federal Express to the police lab.  ECF No. 12-7.  The lab received the sample on May 8, 2017.  *Id*.

[3] Program Statement 5270.09 provides that "[w]hen it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation.  Staff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing.  The incident report should then be delivered to the inmate by the end of the next business day.  The time frame for processing the incident report is suspended until it is released for processing."

Petitioner's disciplinary hearing before the DHO took place on April 18, 2018. ECF No. 12-7. Petitioner acknowledged that he had received a copy of the incident report, understood his rights, and that he waived his right to a staff representative. *Id*. at 2-3. Speaking on his own behalf, Petitioner stated that the substance wasn't his, asked the DHO to review the camera footage, and averred that the proceeding was "null and void because it has been too long." *Id*. at 4. The DHO reviewed the video footage of the incident, several supporting memoranda, photographic evidence of the contraband, the lab report from the Pennsylvania State Police, and the chain of custody form. *Id*. Based on the foregoing, the DHO concluded that the greater weight of evidence supported the conclusion that Petitioner had committed the act as charged. *Id*. at 3. After determining that Petitioner had committed the charged offense, the DHO sanctioned him with 41 days loss of good conduct time, 30 days of disciplinary segregation, a forfeiture of 162 days of non-vested good conduct time, a two-year loss of visiting privileges, and a $500 fine. ECF No. 12-8.

The instant petition for writ of habeas corpus,[4] filed pursuant to 28 U.S.C. § 2241, challenges the due process provided during Petitioner's DHO hearing. Petitioner raises four arguments: (1) the DHO was not an impartial decision maker; (2) the DHO refused to preserve of review the video footage of the incident; (3) FCI McKean staff did not follow BOP policy with respect to chain of custody; and (4) the UDC did not hold Petitioner's initial hearing within five days of the violation, in contravention of FCI McKean's program statement. ECF No. 5. This matter is fully briefed and ripe for disposition.

---

[4] Under § 2241, district courts have authority to grant habeas corpus "within their respective jurisdictions." Petitioner is confined at FCI McKean, which is located within the territorial boundaries of the Western District of Pennsylvania.

B.     Standard of review

Federal prisoners have a liberty interest in statutory good time credits. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *see also* 18 U.S.C. § 3624(b)(1). While "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply," the United States Supreme Court has identified the following minimum procedural due process rights that must be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and, (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67.

In reviewing a disciplinary proceeding, the Court's function is not to decide whether it would have reached the same decision, but to consider "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-57 (1985). *See also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) ("[A] reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause."). This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" *McCarthy v. Warden Lewisburg USP*, 631 Fed. Appx. 84, 86–87 (3d Cir. 2015) (quoting *Hill*, 472 U.S. at 455). Rather, "[o]nce the reviewing court determines that there is

some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected." *Cardona v. Lewisburg*, 551 Fed. Appx. 633, 637 (3d Cir. 2014).

    C.    Discussion

        1.    Bias

Petitioner first contends that the Disciplinary Hearing Officer who conducted his DHO hearing was not impartial because he worked as a case manager in the prison and "would likely have had contact with the [accusing] officer who is a co-worker of McKean on a daily basis and would have had a professional relationship with the [accusing] officer." ECF No. 5 at 7. This claim lacks merit. In the context of a prison disciplinary proceeding, the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body." *See Meyers v. Aldredge*, 492 F.2d 296, 306 (3d Cir. 1974). Conclusory allegations that a DHO must be biased simply because of their position within the prison "[a]re not sufficient to indicate the type of 'direct personal or otherwise substantial involvement' required to show impartiality." *Id*. *See also Lewis v. Canaan*, 664 Fed. Appx. 153, 156 (3d Cir. 2016). Because Petitioner has not presented any evidence that the DHO had a direct personal or substantial involvement in the confiscation or forensic examination of the substance at issue, his claim of bias must be rejected.

        2.    Failure to preserve evidence

Petitioner next contends that the DHO failed to preserve "exculpatory evidence" in the form of the video camera footage of the incident involving the metal detector and the search of Petitioner's gym bag. Petitioner primarily accuses the DHO of failing to honor his request to

review the footage. However, the DHO's report indicates that the hearing officer did review the video footage and considered it in making his decision. ECF No. 12-7 at 4. The DHO described the footage as follows:

> [T]he DHO viewed available video of the incident. You were pulled aside after failing to clear the metal detector. Your belongings, including a bag were searched.

*Id*. As such, Petitioner's contention that the video evidence was not available is contradicted by the evidence of record.

Moreover, to the extent that Petitioner's complaints regarding the video footage amount to a challenge to the sufficiency of the evidence against him, that challenge also fails. In reaching his decision, the DHO relied on a host of exhibits including: the video footage of the incident; photographic evidence of the contraband; the lab report from the Pennsylvania State Police; supporting memoranda authored by investigating officers; and the completed chain of custody form. *See* ECF No. 12-7. These uncontradicted exhibits clearly amount to "some evidence" in support of the charge and, therefore, Petitioner's due process rights were not violated by the DHO's determination. *See Donahue v. Grondolsky*, 398 Fed. Appx. 767, 772 (3d Cir. 2010) (noting that courts are not "required to re-weigh the evidence, or re-assess the credibility of [a petitioner's] defense"); *Sepulveda v. Warden Canaan USP*, 645 Fed. Appx. 115, 118 (3d Cir. 2016) (reviewing court may not independently assess the credibility of witnesses or re-weigh the evidence so long as the DHO's decision is supported by "any evidence in the record") (quoting *Hill*, 472 U.S. at 454-56).

### 3. Failure to follow prison policy and program statements

Petitioner's third and fourth allegations each rest on his contention that staff at FCI McKean violated his due process rights by failing to adhere to their own policies and program

statements.  In his third ground for relief, Petitioner appears to contend that the investigating officer violated BOP policy by failing to maintain a proper supply of narcotic identification kits on the premises so that the substance in his gym bag could be tested at the prison (as opposed to being sent to the Pennsylvania State Police for testing).  Petitioner also suggests that the officer failed to properly seal the evidence bag before shipping it to the laboratory.  In his fourth ground for relief, Petitioner alleges that the prison violated BOP policy by failing to provide an initial hearing before the UDC within five days of the underlying incident.

      Initially, Petitioner's allegations are belied by the record.  Petitioner has not cited any program statement requiring the prison to conduct all substance testing within the prison facility, as opposed to an outside laboratory, and the Chain of Custody Log and Evidence Submission Receipt indicate that, contrary to Petitioner's averment, the evidence envelope was sealed when it was received by the laboratory.  ECF No. 12-7 at 9.  With respect to the timeliness of Petitioner's initial hearing, Respondent correctly notes that BOP policy permits the processing of an incident report to be suspended where, as in the instant case, the incident is being investigated for possible criminal prosecution.  ECF No. 12-9 at 24.  In the absence of any evidence to the contrary, Petitioner has failed to establish that either of the alleged violations occurred.

      More critically, it is well-settled that a "prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under [*Wolff v. McDonnell*]."  *Macia v. Williamson*, 219 Fed. Appx. 229, 233 (3d Cir. 2007).  Even if his allegations were factually supported, Petitioner has not cited any authority for the proposition that the violation of prison policies involving drug testing kits or the failure to hold a hearing within five days fall within the scope of the minimum due process rights outlined in *Wolff*.  As explained above, those minimum requirements are limited to: (1) the right to appear

before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and, (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. Aside from his allegation of bias, which the Court has already rejected, Petitioner does not contend that any of these requirements were not satisfied in this case.[5]

Finally, even if Petitioner could establish that the BOP failed to comply with its own procedural safeguards, he must also "show prejudice from the agency's [alleged] failure to follow its own regulations." *Sierra v. Scism*, 2010 WL 5553955, at *7 (M.D. Pa. Dec. 14, 2010) (collecting cases); *Patel v. Zenk*, 447 Fed. Appx. 337, 340 (3d Cir. 2011). Petitioner has made no attempt to satisfy this requirement. Indeed, given this Court's conclusion that "some evidence" supported the narcotics violation at issue, Petitioner cannot do so. *See, e.g., Patel*, 447 Fed. Appx. at 340 (noting that Petitioner could not demonstrate prejudice stemming from alleged procedural violations because he did not dispute the evidence supporting the charge against him); *Jennings v. Hollingsworth*, 2016 WL 880501, at *8 (D.N.J. March 8, 2016) ("Because this Court has concluded that there is some evidence to support the Code 217 and 297 violations," Petitioner "cannot show that he suffered prejudice."). For each of these reasons, his third and fourth grounds for relief should each be rejected.

---

[5] In any event, the record clearly indicates: Petitioner received written notice of the charge against him on November 6, 2017, more than 24 hours before his initial hearing on November 8, 2017; he was advised of his right to call witnesses, present evidence, and receive assistance from a staff representative; and the DHO supplied a written report describing the evidence he relied upon and the rationale for his disciplinary decision.

III.     Conclusion

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be dismissed.[6]

IV.     Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto.  See Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

　　　　　　　　　　　　　　　　　　　　　／s／ Richard A. Lanzillo
　　　　　　　　　　　　　　　　　　　　　RICHARD A. LANZILLO
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Dated: October 21, 2021

---

[6] Because "[f]ederal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement," the Court need not make a certificate of appealability determination in this matter.  Williams v. McKean, 2019 WL 1118057, at *5 n. 6 (W.D. Pa. Mar. 11, 2019) (citing United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by Gonzalez v. Thaler, 565 U.S. 134 (2012)); 28 U.S.C. § 2253(c)(1)(B).